UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| HEATHER BROWNING, ) | |
| (Social Security No. XXX-XX-0645), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:13-cv-8-WGH-RLY |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

This matter is before the Court pursuant to the parties' consents and Chief Judge Young's Order of Reference. (Dkt. 15). Plaintiff Heather Browning seeks judicial review of the final decision of the Commissioner of Social Security, which found that Plaintiff was not disabled and therefore not entitled to child's insurance benefits based on disability or supplemental security income (collectively, "benefits") under the Social Security Act, 42 U.S.C. § 301 *et seq.* The Court, having reviewed the parties' submissions and relevant law, and being duly advised, **AFFIRMS** the Commissioner's decision.[1]

---

[1] Pursuant to Chief Judge Young's Order staying all social security actions (Dkt. No. 27), the oral argument which had been scheduled for October 9, 2013, was not held.

## I. Background

The facts underlying Plaintiff's applications for benefits and the proceedings that have brought this matter before the Court have been set forth thoroughly and properly in the parties' briefs. The Court revisits them here only as necessary to address the parties' arguments on judicial review.

### A. Procedural History and Jurisdiction

On February 2, 2010, Plaintiff applied for both child's insurance benefits based on disability and supplemental security income, claiming she became disabled on January 16, 1989. (R. at 10). The Social Security Administration denied Plaintiff's applications on April 20, 2010 (R. at 50–53), and again upon reconsideration on July 1, 2010 (R. at 46–48). An Administrative Law Judge ("ALJ") heard Plaintiff's applications on July 7, 2011 (R. at 298), and issued an opinion on August 4, 2011, finding that Plaintiff was not disabled or eligible for benefits (R. at 20A). On August 15, 2012, the Appeals Council denied Plaintiff's request for review (R. at 3–6), which makes the ALJ's decision the Commissioner's final decision on Plaintiff's applications, *see* 20 C.F.R. §§ 404.955(a), 404.981, and gives this Court jurisdiction over Plaintiff's Complaint, *see* 42 U.S.C. § 405(g).

### B. Plaintiff's Conditions and Work History

The Record reflects that Plaintiff has experienced a disquieting history of both mental and physical impairments. Plaintiff was enrolled in special education courses throughout her schooling (R. at 89–153) and graduated high school with a waiver after failing the ISTEP test twice (*see* R. at 91, 101, 111).

Plaintiff, now 24 years old, reads at a kindergarten level. (*See* R. at 16). She has never earned a driver's license because she cannot have the test read to her. (R. at 303–04).

Plaintiff also suffers from obesity and Legg-Calve-Perthes Disease, which has caused Plaintiff pain and limited the range of motion in her left knee and hip since her childhood. (R. at 261–62, 308). In treatment for this condition, Plaintiff underwent a series of operations that resulted in her legs being placed in casts upward of 20 times. (R. at 316, 319–20). Aside from three days of janitorial work through a program at her high school, Plaintiff has never had a job. (R. at 305–306).

## C. Plaintiff's Burden of Proof

In order to qualify for benefits, Plaintiff must establish that she suffered from a "disability" as defined by the Social Security Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, a claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory

findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

### D.  ALJ's Findings

An ALJ must perform a sequential, five-step inquiry to determine whether a claimant is disabled:

> (1) Was the claimant unemployed at the time of the hearing?
>
> (2) Does the claimant suffer from a severe impairment or combination of impairments?
>
> (3) Do any of the claimant's impairments—individually or combined—meet or equal an impairment listed in the Social Security regulations as being so severe as to preclude the claimant from engaging in substantial gainful activity?
>
> (4) Is the claimant unable to perform his past relevant work?
>
> (5) Is the claimant unable to perform any other work existing in significant numbers in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4).  The claimant is disabled only if the ALJ answers "yes" to all five questions.  *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  An answer of "no" to any question ends the inquiry immediately and precludes the claimant from eligibility for benefits.  *Id.*  The claimant bears the burden of proof at steps one through four.  *Id.*  If the claimant succeeds, the Commissioner bears the burden at step five of proving that the claimant is not disabled.  *Id.*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her earliest possible onset date.  (R. at 12).  At step two, the ALJ found that Plaintiff experienced four severe impairments:  obesity,

Legg-Calve-Perthes Disease, borderline intellectual functioning, and learning disorder (not otherwise specified). (R. at 12–13). At step three, the ALJ found that Plaintiff does not have any impairment or combination of impairments meeting or medically equaling the severity of a listed impairment. (R. at 13–15). In making his step three determination, the ALJ noted that, although obesity is not a listed impairment, he considered the effects of Plaintiff's obesity on her other impairments. (R. at 13). The ALJ found that Plaintiff's mental impairments limited her activities of daily living; her concentration, persistence, and pace; and her social functioning; but he also found that those limitations were only mild or moderate and that Plaintiff had experienced no episodes of decompensation. (R. at 13–14).

The ALJ's step three determination gave special attention to whether Plaintiff's impairments satisfied the criteria of 20 C.F.R. 404, Subpart P, Appendix 1, Listing 12.05. (R. at 14–15). The ALJ found that Plaintiff did not satisfy Listing 12.05(A) or (B) because she was not dependent on others for personal needs, was not unable to follow directions, and did not have a valid IQ score of 59 or lower. (R. at 14). To qualify under Listing 12.05(C), a claimant must have a valid verbal, performance, or full-scale IQ score between 60 and 70 and suffer from another physical or mental impairment imposing an additional and significant work-related limitation. 20 C.F.R. 404, Subpt. P, Appendix 1, Listing 12.05(C). Although Plaintiff registered performance and full-scale IQ scores in that range, the ALJ found the scores were invalid. (R. at 14–15). The ALJ based this finding on the evaluation of Dr. Albert Fink, who

suggested that "intra-test scatter" and Plaintiff's "overall range of subtest scores" showed that her true IQ was higher than the scores indicated. (R. at 15).

At step four, the ALJ found that Plaintiff retained residual functional capacity ("RFC") necessary to perform sedentary work with some limitations. (R. at 15). After consulting with a vocational expert, the ALJ determined at step five that Plaintiff can perform jobs that exist in significant numbers in the national economy and therefore is not disabled. (R. at 19–20).

## II. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted); *see also v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). The ALJ—not the Court—is charged with weighing the evidence, resolving material conflicts, making independent findings of fact, and deciding questions of credibility. *Richardson,* 402 U.S. at 399–400. Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). If a conclusion different from the ALJ's also is supported by substantial evidence—even by more or better evidence—the Court nevertheless must affirm the ALJ's decision so long as it is supported by substantial evidence. *See*

*Arkansas v. Oklahoma*, 503 U.S. 91, 112 (1992); *Farrell v. Sullivan*, 878 F. 2d 985, 990 (7th Cir. 1989).

### III.  Analysis

Plaintiff alleges that the ALJ erred in two respects:  first, in finding that Plaintiff did not suffer an impairment or combination of impairments meeting Listing 12.05(C); and, second, in failing to adequately reference Plaintiff's moderate limitations in concentration, persistence, and pace when he posed a hypothetical question to the vocational expert.  The Court will address each issue in turn.

### E. Did the ALJ err in finding that Plaintiff did not suffer an impairment or combination of impairments meeting Listing 12.05(C)?

Plaintiff asserts that the ALJ's finding that Plaintiff did not suffer an impairment or combination of impairments meeting Listing 12.05(C) was erroneous.  To satisfy Listing 12.05(C), a claimant must have "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. 404, Subpt. P, App. 1, § 12.05(C).  When administered a WAIS-II IQ test, Plaintiff registered a verbal IQ of 72, a performance IQ of 69, and a full-scale IQ of 68.  (R. at 14–15).  However, the ALJ found, based on the report of Dr. Albert Fink, that these scores did not accurately represent Plaintiff's IQ and found them invalid.

> Dr. Fink's report states, in relevant part:
>
> There was considerable intratest scatter, particularly in the subtest which evaluates knowledge of word meanings, a subtest which is highly correlated with overall intelligence, and suggests, when

7

>   combined with the overall range of subtest scores, from 3 to 7, that there is higher potential and that an estimate of borderline intellectual functioning is the most appropriate conclusion.

(R. at 265). The ALJ found Dr. Fink's interpretation of the test results supported by other evidence, including the opinions of Dr. Carolyn Hines and Dr. Beth Stone. (R. at 15). Accordingly, he found Plaintiff's IQ scores invalid and therefore found no basis to conclude that Plaintiff satisfied Listing 12.05(C). (*See id.*).

As Plaintiff correctly notes, an ALJ assessing the validity of an IQ score may consider other evidence from the record. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.00(D). Plaintiff argues that substantial evidence—for example, her academic record, her kindergarten reading level, and her inability to obtain a driver's license—demonstrates that she is mentally retarded as generally defined in Listing 12.05. (Dkt. 17 at 3–4). The ALJ erred, according to Plaintiff, by crediting Dr. Fink's report instead of ordering a second IQ test or finding that her IQ scores were supported by the aforementioned evidence and therefore valid. (*Id.* at 4–6).

The Court must affirm the ALJ's finding. The ALJ moored his determination to Dr. Fink's report, and it therefore is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(1); *see also Walters v. Astrue*, 444 Fed. App'x. 913, 917 (7th Cir. 2011) ("a medical opinion from an examining consultative psychologist . . . is not just another piece of evidence"). Plaintiff advances compelling arguments, but they are belied by the standard of review applicable here. First, Plaintiff offers scholarly research she suggests

8

contradicts the scientific theory on which Dr. Fink concluded Plaintiff's IQ is higher than her scores indicate. (*See* Dkt. 26 at 2). By placing that scholarship before the Court, Plaintiff necessarily asks the Court to find that Dr. Fink's conclusion is questionable and entitled to less weight than the ALJ afforded it. Simply put, the Court may not re-evaluate facts or reweigh evidence and will not question the scientific validity of Dr. Fink's conclusion. *See Butera*, 173 F. 3d at 1055.

Second, Plaintiff points to other evidence from the record and argues that it shows that Plaintiff's test scores were indicative of her true intellect. (*See generally* Dkt. 17 at 4–5; Dkt. 26 at 2–4). This evidence, she suggests, is more substantial than the evidence the ALJ found supported Dr. Fink's conclusion. (*See generally* Dkt. 17 at 4–5; Dkt. 26 at 2–4).

Plaintiff may well be correct. The Court joins Plaintiff's bewilderment at the ALJ's finding that "while she was in special education, she received good grades." (*See* R. at 15). Indeed, despite being enrolled in special education, Plaintiff achieved a high school grade point average of 1.9 and failed the ISTEP exam twice. (R. at 101, 113). The ALJ's statement might be read—generously—as consistent with Dr. Hines's report that Plaintiff "said she earned A's if she liked the classes." (R. at 255). But Dr. Hines's statement conveys only that Plaintiff earned some number of good grades. The ALJ's statement portrays Plaintiff as a strong student who earned good grades consistently—a notion that cannot be reconciled with any evidence in the

9

record and is plainly contradicted by her high school transcript.  (*See* R. at 113).

Equally disconcerting is the ALJ's suggestion that Plaintiff could not possibly have an IQ below 70 because Dr. Hines described her as sarcastic. (*See* R. at 15, 254).  The ALJ did not tie this finding to any scientific evidence linking sarcasm and IQ.  (*See* R. at 15).  The Court is not aware of any, and it does not read Dr. Hines's report as suggesting such a connection.  (*See* R. at 254).

Finally, the ALJ arguably misrepresents Dr. Hines's report, stating that she examined Plaintiff and "agreed with Dr. Fink's conclusion." (*Id.*).  Dr. Hines agreed with Dr. Fink in that she too found that Plaintiff likely functioned at a borderline level, but she by no means endorsed Dr. Fink's conclusion as to the validity of Plaintiff's IQ scores.  (*See* Dkt. at 259).  Rather, Dr. Hines merely mentioned in her report that Dr. Fink found intratest scatter and that he suggested Plaintiff operated at a level above her scores.  (*Id).*  She did not express agreement with either Dr. Fink's conclusion about the test scores or the theory by which he reached that conclusion.  (*Id.*).

However sound they may be, though, Plaintiff's arguments have no impact on the outcome of this matter.  Dr. Fink was an examining source.  His opinion therefore is substantial evidence, and it supports the ALJ's conclusion. The Court does not consider—nor does Plaintiff argue—this to be a case where the ALJ has ignored an entire line of evidence.  *Compare, e.g., Golembiewski v. Barnhart*, 322 F.3d 912, 917–18 (7th Cir. 2003).  To the contrary, this is a case

10

where the ALJ appropriately based his conclusion on substantial evidence and then muddied the waters by offering a head-scratching explanation of how peripheral evidence supported that conclusion. Even though substantial evidence points in the opposite direction, the Court must affirm the ALJ's finding that Plaintiff's sub-70 IQ scores were invalid and that she therefore could not satisfy the requirements of Listing 12.05(C).

### F. Did the ALJ err by failing to reference a moderate limitation in concentration, persistence, and pace in presenting his hypothetical question to the vocational expert?

As part of his step five inquiry, the ALJ presented a series of hypothetical questions to a vocational expert ("VE") for the purpose of determining what types of jobs Plaintiff, given her RFC, could perform and whether those jobs exist in significant numbers in the national economy. (R. at 322A–328). Plaintiff correctly notes that, at steps three and five, the ALJ found that Plaintiff experienced moderate limitations in concentration, persistence, and pace. (Dkt.17 at 6; Dkt. 26 at 6–7; R. at 13–14, 19). She argues that the ALJ erred when, in framing his first hypothetical to the VE, he failed to adequately reference those limitations. (*See generally* Dkt. 17 at 6–7).

The VE attended Plaintiff's hearing before the ALJ, observed the testimony and evidence presented there, and certified that she had reviewed Plaintiff's file prior to the hearing. (R. at 298, 301, 324). The hypothetical to which Plaintiff objects was presented, in its entirety, as follows:

> For the first hypothetical, please assume an individual of the claimant's age, education, and work experience who has the following residual function [sic] capacity. The individual would be able to perform sedentary work, as defined in the Social Security

11

>regulations.  Additionally, the individual would never be able to climb ladders, ropes or scaffolds.  Would be able to perform other postural activities occasionally.  The individual would be able to push and or pull in the bilateral lower extremities, only occasionally.  The individual would be able to understand, remember and carry out [INAUDIBLE] tasks.  Could maintain concentration, consistency and pace of no more than average production standards.  Based on that residual functional capacity, would—would there be any jobs existing in the national or regional economy, that such an individual could perform[?]

(R. at 325).

In the Seventh Circuit, an ALJ's hypothetical question to a VE constitutes error if it fails to "orient the VE to the totality of a claimant's limitations."  *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).  Plaintiff argues that the hypothetical in question failed to properly reference the limitations the ALJ found at steps three and five.  In fact, Plaintiff argues, the ALJ's question suggested Plaintiff was not subject to any limitation because a person who can perform at "average production standards" is, by definition, not limited at all.  (*See* R. at 325; Dkt. 17 at 7).

Both parties offer some case law that, although not controlling, provides some guidance from factually similar circumstances.  Plaintiff directs the Court's attention to *Rorick v. Astrue*, in which remand was ordered for the ALJ's failure to incorporate her step three finding of a moderate limitation into a hypothetical question posed to a vocational expert.  *See* 2012 WL 729843 (N.D. Ind. Mar. 6, 2012).  Notably, the *Rorick* court suggested that a hypothetical is not erroneous when it is rooted in an RFC assessment that is adequately supported by the record.  *See id.* at *5.  In remanding, that court

12

specifically found that the ALJ's RFC determination—and therefore the hypothetical that followed—was not rooted in medical evidence. *Id.* at *6–7.

The Commissioner has furnished the Court with a laundry list of cases—although none is from our Court of Appeals or this District—holding that *O'Connor-Spinner* does not apply to this matter and that an ALJ does not err when the hypothetical accurately describes the claimant's RFC. (*See* Dkt. 22 at 8). Among them is *Allbritten v. Astrue*, in which the court found the ALJ's hypothetical allowable because it "was entirely consistent with the ALJ's RFC finding, which, with respect to Plaintiff's mental limitations, stated simply that Plaintiff was limited to performing simple, unskilled work that involved no more than superficial contact with other people." 2012 WL 243566 at *7 (N.D. Ind. Jan. 25, 2012).

The rules of *Rorick* and *Allbritten* are not at odds with one another, and the ALJ's hypothetical in this case complies with both. The ALJ's hypothetical and his step five RFC determination are mirror images and therefore satisfy *Allbritten*'s consistency requirement. (*Compare* R. at 325 *to* R. at 19). As for *Rorick*, the ALJ's question initially appears to have been rooted in his RFC determination (*id.*), leaving unresolved only whether the RFC determination was adequately supported by the record.

The Commissioner argues that the RFC determination was consistent with the opinion of Dr. Joseph Pressner, an examining source who found Plaintiff capable of performing simple, repetitive tasks. (*See* Dkt. 22 at 8-9; R. at 19, 233). The ALJ's opinion does in fact cite Dr. Pressner's evaluation, but it

13

adds, "This determination is generally consistent with the objective record, though [Plaintiff's] borderline intellectual functioning warrants further limitation." (R. at 19). This, Plaintiff argues, indicates that the subsequent RFC determination and hypothetical—which refer to simple, repetitive tasks but no "further limitation"—are not satisfactorily rooted in the ALJ's RFC determination. (*See* Dkt. 26 at 7–8).

The Court again sympathizes with Plaintiff's logic. The ALJ's choice of language did the Commissioner no favors. The ALJ's dialogue with the VE does not include any variation of the word "limitation" with reference to Plaintiff's concentration, persistence, or pace. (*See* R. at 325). Moreover, it is difficult to conceptualize a person who has been deemed restrained by physical and mental limitations as also being able to achieve up to average production standards.

Nevertheless, the law counsels that the ALJ's question to the VE was not erroneous and that his decision must be affirmed. Viewing this question through a narrow lens, the ALJ's hypothetical complies with the authorities presented by the parties. The ALJ's hypothetical and his RFC determination are consistent with one another word for word and therefore satisfy *Allbritten*. To satisfy *Rorick*, the RFC determination also must be supported by the record. Were the RFC determination not supported by the record, that in itself would constitute reversible error. 42 U.S.C. § 405(g). Notably, though, Plaintiff does not allege such an error.

At this point, the Court finds it also is valuable to view the problem through the broader lens of *O'Connor-Spinner*—which also happens to be the only authority offered by the parties that binds the Court on this issue. If the ALJ's job was to "orient the VE to the totality of [Plaintiff's] limitations," he did so. *See O'Connor Spinner*, 627 F.3d at 620. The ALJ's hypothetical presented, word for word, his RFC determination—an RFC determination that Plaintiff does not assert was, in its own right, unsupported by substantial evidence.

Admittedly, the ALJ did not avail himself of an explicit phrase like "limitation in concentration, persistence, and pace" in crafting his hypothetical. However, the Court finds it significant that the ALJ began by instructing the VE to consider "an individual of the claimant's age, education, and work experience . . . ." (R. at 325). This, standing alone, may seem inconsequential boilerplate that forms the beginning of every hypothetical. And it may well be. But, the VE was present for the entire hearing and was able to observe all the testimony presented. (R. at 298, 301). Further, the VE testified that she had reviewed Plaintiff's file prior to the hearing. (R. at 324). Both were full of evidence demonstrating limitations in Plaintiff's concentration, persistence, and pace: her struggles with reading (R. at 304), her special education (R. at 305), her inability to count money (R. at 307), her failure to pass the ISTEP exam (R. at 314–15), and all the other evidence Plaintiff holds up as supporting her claim.

In light of the VE's presence and preparation, the Court finds that, to the extent the hypothetical lacked an express reference to Plaintiff's limitations in

15

concentration, persistence, and pace, the ALJ's instruction to consider a person of Plaintiff's "education and work experience" was sufficient to properly orient the VE to Plaintiff's limitations. Accordingly, the Court finds the ALJ did not err in presenting his hypothetical question to the VE.

## IV. Conclusion

For the foregoing reasons, the Court finds that the ALJ did not commit either of the errors Plaintiff alleges and therefore **AFFIRMS** the Commissioner's final decision.

**SO ORDERED** the 11th day of December, 2013.

William G. Hussmann, Jr.  
United States Magistrate Judge  
Southern District of Indiana

**Distributed to all ECF-registered counsel of record via email.**